Law No. 22-cv-03268
5442-468 TMP

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROGHIEH GHOLAMI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Law No. 22-cv-03268-CRL-EIL |
| | ) | |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendant, BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, by

THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., its attorneys, and for its Reply

to Plaintiff's Response [d/e #29] to Defendant's Motion for Summary Judgment [d/e #22] pursuant

to Local Rule 7.1(D)(3) states as follows:

**INTRODUCTION**

As it pertains to Plaintiff's Response to Defendant's Motion for Summary, the Plaintiff's

disputed facts fail to set forth sufficient material to support a dispute.

**REPLY TO PLAINTIFF'S ADDITIONAL STATEMENTS OF UNDISPUTED FACTS (hereinafter PASF).**

**Relevant Structure of UIS**

1.      The UIS is one of three campuses of the University of Illinois. It is governed by the

University of Illinois Board of Trustees. https://www.uis.edu/about/leadership (Last visited May 27,

2025).

**RESPONSE:  It is conceded to be material and undisputed.**

Law No. 22-cv-03268
5442-468 TMP

2.      UIS has four colleges: College of Arts and Sciences, College of Education, college of Business and Management, College of Public Affairs. Doc. 22-7 at 12.

**RESPONSE:  It is immaterial and undisputed.  The number of colleges and their names is not relevant to either Plaintiff's claims or to the defenses.**

3.      Within the College of Business and Management is the Department of Management Information Services ("MIS"). Ex. 4 at 28, *see also* https://www.uis.edu/mis (Last visited May 27, 2025).

**RESPONSE:  It is conceded to be material and undisputed.**

4.      The MIS degree program at UIS focuses on providing a balance between technical skills and knowledge of business functions and processes. https://www.uis.edu/mis/about-mis (Last visited May 27, 2025).

**RESPONSE:  It is immaterial and undisputed.  The MIS degree program and its focuses are relevant to students who may attend the University, but this information is not relevant to the claims made by the Plaintiff.**

5.      Each college has a dean. The role of dean is comparable to that of a CEO of a small company. The dean is in charge of the administrative and financial aspects of the college. Doc. 22-8 at 3, dep. p. 8.

**RESPONSE:  It is material and undisputed that each college may have a dean.  It is immaterial and undisputed that Dean Bhattacharya described his position as dean as comparable to a CEO.  It is material and undisputed that as the dean, Dean Bhattacharya is in charge of the budget for the College of Business and Management and Professor of Accounting. Doc. 22-8, pp. 7-8.**

Law No. 22-cv-03268
5442-468 TMP

6.      As of February 2019, Somnath Bhattacharya has been the dean of UIS' College of Business and Management. Doc. 22-8 at 3, dep. p. 7.

**RESPONSE:  It is conceded to be material and undisputed.**

7.      The dean of the College of Business and Management reports to the UIS Provost who, in turn, reports to the chancellor. The chancellor reports to the president of the University of Illinois, who then reports to the board of trustees. Doc. 22-8 at 4, dep. at 9, Ex. 4 at 28.

**RESPONSE:  It is conceded to be material and undisputed.**

8.      Dennis Papini served as the provost at UIS from fall of 2017 until January 2023. Doc. 22-7 at 8.

**RESPONSE:  It is conceded to be material and undisputed.**

9.      The provost serves as UIS' chief academic officer. Doc. 22-7 at 8.

**RESPONSE:   It is immaterial and undisputed. Dennis Papini made this statement in his deposition. However, it is immaterial to this motion as his role as chief academic officer neither proves nor disproves any element of the Plaintiff's claim.**

10.     At the time Gholami initially came to UIS, Dr. Rassule Haididi was the MIS department chair. Doc. 22-6 at 43-44.

**RESPONSE: It is immaterial and undisputed.  Plaintiff states she came to UIS in 2015.  Doc. 22-6 p. 43.  Plaintiff's reference to events prior to her rehire are barred by the statute of limitations. In addition, any events occurring during Plaintiff's initial dates of employment were not exhausted.  Plaintiff's claims are limited to events associated with her rehiring in 2019.**

Law No. 22-cv-03268
5442-468 TMP

11.     There are three levels of professor at UIS. The first is the assistant professor; the second is the associate professor; and the third is the full professor. 22-8 at 13, dep. at 46.

**RESPONSE:  It is conceded to be material and undisputed.**

12.     At UIS tenure is an indefinite appointment the faculty. 22-8 at 13, dep. at 46.

**RESPONSE:  It is conceded to be material and undisputed.**

13.     While not always, UIS hires professors and gives them tenure when they initially start at the university. Doc. 22-7 at 34.

**RESPONSE:  It is conceded to be material and undisputed that it is possible but not common for a professor at UIS to be brought in with tenure. (Any suggestion beyond what is stated is immaterial as such is not supported by any additional evidence).**

**Gholami's professional background**

14.     Gholami is a British citizen who was born in Iran. Doc. 22-6 at 43-35.

**RESPONSE:  It is conceded to be material and undisputed.**

15.     In 1997, Gholami received a B.Sc. in Applied Mathematics in Computer Science at K.N. Toosi University of Technolgy in Tehran, Iran. Ex. 2 at 24.

**RESPONSE: It is conceded to be material and undisputed that Gholami has a B.S. in computer science.**

16.     In 2006 Gholami received a Ph.D. in Management Information Systems from the National University of Singapore. Ex. 2 at 24.

**RESPONSE:  It is conceded to be material and undisputed that Gholami has a PhD in MIS.**

17.     In 2009 Gholami received a Postgraduate Professional Certificate in Learning in Higher Education from Aston University in the United Kingdom. Ex. 2 at 24.

Law No. 22-cv-03268
5442-468 TMP

**RESPONSE:  It is conceded to be material and undisputed that Gholami has additional qualifications in Higher Education.**

18.     From 2001-2005 Gholami was a Research Scholar at the University of Singapore.

**RESPONSE:  It is conceded to be material and undisputed that Gholami was a scholar prior to her employment at UIS.**

19.     From 2005 until 2011, Gholami served as a tenure track assistant professor at Aston Business School in the United Kingdom. Ex. 2 at 23, 32.

**RESPONSE:  It is conceded to be material and undisputed that Gholami had experience as a professor prior to her employment with UIS. It is immaterial and undisputed that Gholami may have held ranks awarded at other schools outside of the US. It is conceded to be material and undisputed that despite Gholami's rank at other institutions, such rank was not automatically given to new hires at UIS.**

20.     Aston is a triple accredited business school and a research/balanced institution. Ex. 2 at 32.

**RESPONSE:  It is immaterial but disputed. Gholami's reference to the accreditation for the Aston business school is not relevant to her claims. It is conceded to be material and undisputed that Gholami had teaching experience on her resume before she began working at UIS. Plaintiff's reference to Ex. 2 at 32 refers to her typed up allegations interspersed with her resume material. Plaintiff's exhibits are immaterial to support her clams as she may not create issues of fact with her own inconsistent statements. Moreover, nothing in these documents establishes a relevant fact. It is immaterial that the Aston business school refers to itself as having 'triple-crown' accreditation per its website.**

Law No. 22-cv-03268
5442-468 TMP

https://www.aston.ac.uk/bss/aston-business-school. **This is immaterial as there is no evidence to establish that Gholami's employment at Aston required a different outcome.**

21.    In 2011 Aston promoted Gholami to an associate professor and granted her tenure. Ex. 2 at 32.

**RESPONSE:  It is immaterial and undisputed. It is undisputed that Gholami had experience at Aston prior to coming to UIS.  However, how another school awards ranks and titles is immaterial to the issues in this case as relates to Plaintiff's claim that UIS must follow another university's decisions regarding rank and title for her. It is material and undisputed that Gholami was qualified to be a professor at all times she was hired by UIS.**

22.    Gholami remained at Aston until she came to UIS in 2015. Ex. 2 at 32. While on sabbatical from Aston, she served as a visiting associate professor at Carenegie Mellon University in the Spring of 2015. Ex. 2 at 23.

**RESPONSE:  Immaterial but disputed. This statement is immaterial to the claims made as there is no reference provided as to how this information impacted any decision made by Defendant. In addition, Ex. 2 at 23 is not substantive evidence of any particular fact. Plaintiff's Ex. 2 is a conglomeration of material Gholami typed up from pages taken from the internet, her email and elsewhere. It is not admissible evidence. Nevertheless, it is immaterial as it supports no elements in Plaintiff's claims.**

23.    After she left UIS in 2018, Gholami went to the NEOMA Business School in France as a full professor. Doc. 2 at 32.

**RESPONSE:  It is conceded to be material and undisputed that Gholami left UIS in 2018. It is conceded to be material and undisputed that she went to France and worked at the**

Law No. 22-cv-03268
5442-468 TMP

**NEOMA Business School.  It is material and undisputed that Gholami claims to have obtained the rank of full professor at NEOMA.**

24.      Like Aston, NEOMA is a triple accredited business school. Doc. 2 at 32.

**RESPONSE:  It is conceded to be material and undisputed that NEOMA has accreditations as a business school. It is immaterial and undisputed that Gholami obtained the rank of full professor at a business school in France as there is no evidence to suggest that Gholami's rank at another institution requires UIS to give Gholami the same rank upon her return to UIS.**

25.      Triple accreditation in management education, also known as triple-crown accreditation, describes a business school accredited by three major accreditation bodies: The Association to Advance Collegiate Schools of Business (AACSB), the Association of MBAs (AMBA), and EFMD Quality Improvement System (EQUIS). About 1% of Business Schools worldwide are triple-accredited and ab out 6% of Business Schools hold AACSB accreditation. Aston Business School (and NEOMA Business School) is triple-accredited and UIS is only AACSB accredited. Aston University and NEOMA Business School are both balanced institutions or R2/DPU. Ex. 1 at 2.

**RESPONSE:  It is immaterial and undisputed that NEOMA and Aston business schools are noted to have triple-crown accreditation as that term is defined.  Plaintiff's Ex. 1 at 2 is nothing more than her typing out her beliefs and feelings. She may not create an issue of fact with her own testimony.**

**Gholami's first period of employment at UIS**

26.      Gholami was recruited to come to UIS by Dr. Haididi. Ex. 1 at 2.

Law No. 22-cv-03268
5442-468 TMP

**RESPONSE:  It is immaterial and undisputed. This information is immaterial as Ex. 1 at 2 refers to Plaintiff's personal description as to how she came to be employed at UIS in 2015. The issues in this case stem from her re-hire in 2019.  Claims based upon old events were not raised in the complaint.  Accordingly, such information is not material to Gholami's rehire.  The information is material and undisputed to the extent Plaintiff is admitting that she felt misled in 2015 but returned in 2019.  It is material and undisputed that Plaintiff believed that she met the criteria to be promoted to full professor to the extent she failed to take the steps outlined in the UIS Faculty Personnel Policy.**

27.    In March 2015 Gholami interviewed to come to UIS. During that interview Dr. Haididi told her that if she came to UIS she would be evaluated for tenure in 2016 and promoted to the rank of full professor shortly thereafter. Ex. 1 at 2.

**RESPONSE:  It is immaterial but disputed. Plaintiff's Exhibit 1 is no more than Plaintiff's statement of her view of the case. Her statements are hearsay evidence. Her statements are immaterial as this case relates to Plaintiff's events occurring more than 2 years prior to the filing of this lawsuit. Moreover, this event is not relevant to Plaintiff's claims as stated, nor exhausted.  The document is not evidence of the offer. It is Plaintiff's statement that such occurred 4 years prior to her rehire in 2019. The document cited is not admissible evidence of what occurred. While Plaintiff herself could testify at a trial, evidence relating to events outside the relevant time period would be barred as irrelevant and outside the scope of the claims made.**

Law No. 22-cv-03268
5442-468 TMP

28.     During her interview, Dr. Haididi told Gholami she would have to be at UIS for two years before she could be awarded tenure. She could not be hired in with tenure because of previous "troublemakers" from Iran and Korea who had caused problems at UIS. Ex. 1 at 2.

**RESPONSE:  It is immaterial but disputed. Again, Plaintiff cites to evidence that predates the events at issue in this claim.  Statements made by Hadidi in 2015 are not relevant and are therefore not material to the claims by Plaintiff relating her to rehire in 2019.**

29.     Dr. Hadidi emailed Gholami and confirmed she had to be at UIS for two years before she would be promoted to a full professor. Ex. 2 at 141.

**RESPONSE:  It is immaterial but disputed. Ex. 2 at 141 does not support this statement. The document does not refer to Dr. Hadidi at all. On its face, the document appears to be an email from Plaintiff to a Mehrdad Massoudi as it starts; however, the information below this contains no contact information or dates to establish who sent the emails or what date the emails were sent. These are all obviously manipulated into a document which cannot be verified. It is hearsay evidence of alleged statements by Dr. Hadidi. On its face, the document is from 2015 and is therefore not actionable and not relevant to the claims stemming from 2019.**

**It is material and undisputed that the UIS personnel policy includes a requirement that in order to be _eligible_  for promotion to the rank of Clinical or Research Professor, a candidate must have served at least 6 years as a Clinical or Research Associate Professor at the University or at a comparable institution and have completed 2 years of full-time continuous service at the University in the rank of Clinical or Research Associate Professor.**

Law No. 22-cv-03268
5442-468 TMP

**Plaintiff's reference to her qualifications is immaterial as she attempts to equate her eligibility with a right to promotion.**

30.     Gholami was hired as an associate professor and commenced teaching at UIS in the fall of 2015. Doc. 22-6 at .

**RESPONSE:  It is conceded to be material and undisputed.**

31.     Ultimately, Dr. Haididi told Gholami Rassule Hadidi that she was hired due to her strong profile, scholarship, international experience, and to fulfill gender and racial diversity requirements. Ex. 2 at 136.

**RESPONSE:  It is immaterial but disputed. This statement is immaterial because Hadidi's statements to Gholami are not relevant and constitute inadmissible hearsay as alleged. Plaintiff puts no context into the statement, so it must be assumed that this relates to her hiring in 2015 which is outside the scope of the claims made herein. Plaintiff's Ex. 2 does not contain a p. 136. Counsel's copy of Ex. 2 jumps from p. 90 to p. 139.  There is no support for this statement. It is not relevant as to any claim made.**

32.     During her initial tenure at UIS, Gholami spoke with her colleague Tewei Wang and complained that Dr. Haididi was sexually harassing her. Doc. 22-6 at 82.

**RESPONSE:  It is immaterial but disputed. Plaintiff spoke with Wang, a colleague about her interactions with Hadidi.  Her comments to him are not related to the claims in this case. Wang is/was a coworker of the same rank per the evidence submitted. The timeframe is outside the statute of limitations and outside the material complained of to the EEOC which did not occur until October of 2019. In addition, Plaintiff's testimony on the matter does not support the statement as she admits that she "shared things with him", but does not**

Law No. 22-cv-03268
5442-468 TMP

**indicate her exact words. She considers Hadidi asking her out and staring at her body parts to be sexual harassment. Doc. 22-6 p. 80-84. Hadidi's actions are not part of the claim. No evidence has been presented to suggest that these prior events negatively impacted Plaintiff's rehire in the ways stated in her complaint.**

33. On September 13, 2016, Dr. Haididi invited Gholami to join him for the UIS Alumni Gala scheduled for October 21, 2016. Ex. 3 at 229-230.

**RESPONSE: It is material and undisputed that Plaintiff received a polite invitation from Dr. Hadidi to attend an Alumni event to which Plaintiff indicated that she may wish to attend. It is immaterial and undisputed as it pertains to any other argument. Events occurring outside the statute of limitations by Hadidi who was not involved in rehiring Plaintiff are not material to this claim.**

34. In September 2016, Gholami was first sexually harassed by Dr. Haididi. Ex. 1 at 3. This incident occurred at a country club in Springfield, Illinois. Doc. 22-6 at 75.

**RESPONSE: It is immaterial but disputed. Plaintiff's Ex. 1-3 is not admissible or relevant evidence. First, Plaintiff's claim is based upon her rehire in 2019. Plaintiff's Ex. 1-3 is her own typed up version of what she claims occurred in 2016. Such events are not relevant and therefore are immaterial to the claims made herein. Evidence regarding such immaterial events would be subject to a motion in limine to bar events outside the relevant timeframe and therefore should not be considered as relevant to defeat the pending summary judgment motion. The Plaintiff's characterization of her interactions with Hadidi is immaterial. Plaintiff's statements are legal conclusions. She may not contradict her statements in her deposition to create a question of fact. She testified that Hadidi asked**

Law No. 22-cv-03268
5442-468 TMP

**her out. She said No. This does not meet the legal definition of sexual harassment. It is not**

**part of the claims in this case. It is not material to any claim or defense.**

35.     Haididi told Gholami that he wanted to have a physical relationship with her. Doc. 22-6 at 76. Gholami believed this was sexual harassment and told him that she was not interested. Doc. 22-6 at 80.

**RESPONSE:   It is immaterial but disputed. Gholami's interactions with Hadidi occurred outside the relevant time frame for this claim. Accordingly, his comments are immaterial. Plaintiff's characterization of Hadidi's statements is also immaterial and constitute a legal conclusion.**

36.     Gholami believed that based upon UIS guidelines, a supervisor asking out a subordinate constituted sexual harassment. Doc. 22-6 at 81.

**RESPONSE:  It is material and undisputed that Gholami characterized Hadidi's comments as harassment for purposes of her report to Papini.**

**It is immaterial but disputed. The statement is immaterial to serve as the basis for any claim against the Defendant. Plaintiff's characterization of her conversation does not support any element of her claims for discrimination. The statement is disputed as the law does not characterize the behavior at issue as sexual harassment. In addition, these beliefs are not relevant to Plaintiff's claims concerning her rehire in 2019.**

37.     After the luncheon, Dr. Haididi wrote to Gholami in broken Farsi asking when they could start dating. Doc. 22-6 at 85.

Law No. 22-cv-03268
5442-468 TMP

**RESPONSE:   It is immaterial but disputed. Hadidi's conversations with Gholami are not relevant to her claims.   In addition, Gholami testified slightly differently in her deposition. This information is not material to any claim stated.**

38.     On September 18, 2016, an hour after Haididi's email and shortly after Haididi asked her to have a physical relationship, Gholami followed up in writing advising that she wanted to keep their relationship professional. Ex. 3 at 223, Doc. 22-6 at 294.

**RESPONSE:   It is immaterial and undisputed. Gholami's interactions with Hadidi are not material to the claims in the case. They are not the issue and are outside of the relevant time frame. It is not disputed however that Gholami responded as noted. Ex. 3 at 223.**

39.     On several occasions, Dr. Haididi stared at Gholami's body parts in a sexual manner. Doc. 22-6 at 82-83.

**RESPONSE:   It is immaterial and unknown. Whether this occurred or not is not material to the claims against the Defendant.**

40.     By a vote of 9-0, on October 25, 2016, the MIS Department Executive Committee recommended that Gholami be granted tenure. Ex. 2 at 219-225.

**RESPONSE:   It is material and undisputed that the Executive Committee recommended that Gholami be granted tenure.**

41.     On November 29, 2016, the College Executive committee recommended Gholami for tenure. Ex. 2 at 213-217.

**RESPONSE:   It is material and undisputed that Gholami was recommended for tenure.**

42.     In its recommendation, the Executive Committee stated "Gholami has established an excellent portfolio of teaching, advising, and service records and an outstanding research

Law No. 22-cv-03268
5442-468 TMP

record." It concluded, The College of Business and Management Personnel Committee believes that Dr. Gholami has demonstrated excellence in teaching, and high quality in the combined areas of scholarship and service, and therefore should be granted tenure." Ex. 2 at 217.

**RESPONSE:  It is conceded to be material and undisputed that Gholami was properly awarded tenure in 2017. It is immaterial to the claims in this case.  No argument is made that Gholami fails to meet the requirements for tenure.**

43.     On January 3, 2017, then dean Ronald McNeil recommended Gholami for tenure at UIS. In making this recommendation he noted that "Dr. Gholami has the highest number of citations in the College of Business and Management" since 2011." He further wrote "She clearly exceeds the AACSB requirements for a Scholarly Academic qualified faculty member at the graduate and undergraduate levels. Her scholarship productivity certainly increases the overall College of Business and Management's publication profile." Ex. 2 at 171-175.

**RESPONSE:  It is material and undisputed that Gholami was recommended and received tenure in 2017.  It is immaterial and undisputed as her tenure status does not require that she be made a full professor without following the UIS policies and procedures for promotion.**

44.     Dean McNeil also noted that Gholami would be the first female MIS professor to receive tenure. Ex. 2 at 26.

**RESPONSE:  It is material and undisputed that Gholami received tenure in 2017.**

45.     Dean McNeil's recommendation concluded by stating "the MIS Department Executive Committee members who were present at the meeting unanimously and enthusiastically recommend Dr. Gholami be granted tenure at UIS." Ex. 2 at 26.

Law No. 22-cv-03268
5442-468 TMP

**RESPONSE:  It is conceded to be material and undisputed that Gholami was granted tenure in 2017.**

46.     On February 17, 2017, UIS' Tenure Review committee recommended Gholami be granted tenure. Ex. 2 at 229-231.

**RESPONSE:  It is conceded to be material and undisputed that Gholami was granted tenure in 2017.**

47.     The tenure committee noted that Gholami was the "most read author from UIS" and "has the highest number of citations in the College of Business and Management." The Committee concluded "these are exceptional achievements." Ex. 2 at 230-231.

**RESPONSE:  It is conceded to be material and undisputed that Gholami was granted tenure in 2017.  The remaining statement is immaterial and undisputed. Gholami is a qualified professor. However, this is not material to her claims as her statements about her achievements do not equate with a pass on following the policy and procedures for promotion. Doc. 22-2 sets forth the procedure for promotion of faculty to the rank of professor in place at the time of Plaintiff's departure and rehire at UIS.  Section 3 sets out the eligibility requirements.  Plaintiff's statements and references to her achievements are evidence of her eligibility. However, they do not require circumvention of the remaining paragraphs which place the burden on candidates to follow a process and present proof and documentation of an interest in being promoted consistent with the terms identified in Section 4. Review and Assessment Process. Doc. 22-2 p. 29-30.**

48.     A formal recommendation for Gholami's tenure was made to the Chancellor on March 21, 201 Ex. 2 at 232-36.

Law No. 22-cv-03268
5442-468 TMP

**RESPONSE: It is conceded to be material and undisputed that Gholami was recommended for tenure in 2017. It is immaterial and undisputed that her tenure does not automatically equate to a rank of full professor.**

49.	On April 13, 2017, the chancellor let Gholami know she agreed with the tenure recommendation. Ex. 2 at 236.

**RESPONSE: It is immaterial and undisputed. Whether the chancellor agreed or disagreed is not relevant to Plaintiff's claims. Whether the chancellor spoke with Gholami in 2017 is also not relevant as these issues do not prove or disprove any element of Plaintiff's claim.**

50.	In April of 2017 Gholami reported sexual harassment to the president of the UIS Faculty Union, Kristi Barnwell. Ex. 1 at 4. Thereafter, on April 6, 2017, Barnwell wrote to UIS administration about significant issues Roya Gholami is facing and suggests a meeting to discuss the matter and find a way forward. Ex. 3 at 273.

**RESPONSE: It is immaterial but disputed. Ex. 1 at 4 is not evidence of Plaintiff's report of harassment. Plaintiff attaches her summary of events. While she may testify that she reported information to a union president, this is not material to any of the claims made in this case relating to her rehiring in 2019. Plaintiff's recitation is irrelevant as her statements to others are no more than consistent statements of her personal reports and feelings to those who are not involved in the decisions at issue. Plaintiff's Ex. 3 p. 273 (Doc. 29-4) is an email from Plaintiff to herself wherein she includes an email from Barnwell to Deborah regarding unstated issues in 2017. Plaintiff's 2021 email to herself of emails to others suggests potential manipulation of the communications between others. Regardless of the authenticity, this statement is immaterial as it is vague hearsay unrelated to occurrences in**

Law No. 22-cv-03268
5442-468 TMP

**2019. Accordingly, the comments were made outside of the relevant timeframe. They are therefore immaterial.**

51.    When nothing was done about this concern and it went unaddressed, Ghoalmi concluded that she had no option other than leaving UIS. Doc. 22-6 at 54-55.

**RESPONSE:  It is conceded to be material and undisputed that Gholami did nothing following her discussion with her union representation in 2017. Doc. 22-6 at 54-55.  It is immaterial but disputed that Gholami felt her only option was to leave. Gholami knew that she could have filed formal complaints regarding Hadidi. However, she chose not to do so. Doc. 22-6 at 74-75. These reports are not relevant as they are outside the relevant timeframe. There is also no evidence to suggest that her reports to Papini resulted in negative actions.**

52.    On July 13, 2017, the Board of Trustees of the University of Illinois approved that Gholami be granted indefinite tenure. Ex. 2 at 237.

**RESPONSE:  It is conceded to be material and undisputed that Gholami was granted tenure in 2017. It is immaterial but disputed that to suggest that this letter means Gholami would have tenure at UIS forever regardless of her employment circumstances.**

53.    On March 20, 2018, Gholami notified UIS that she has been offered a position as a full professor at a business school in Paris, France, and she has accepted the offer. Ex. 3 at 274.

**RESPONSE:  It is conceded to be material and undisputed.**

54.    On March 23, 2018, Gholami sent a letter informing UIS that she would be resigning her position as an Associate Professor effective August 15, 2018. Ex. 3 at 252.

**RESPONSE:  It is conceded to be material and undisputed.**

Law No. 22-cv-03268
5442-468 TMP

55.    On March 26, 2018, Haididi wrote Gholami indicating she was a "very valuable member of the MIS Department and campus community" and letting her know they could look into possibly matching her offer. Ex. 4 at 37.

**RESPONSE:  It is conceded to be material and undisputed that Gholami resigned.  The remainder appears to be immaterial and undisputed. Gholami did not obtain or accept a counteroffer.**

56.    On March 27, 2018, the Provost's office requested information form Haididi about Gholami's new job. Ex. 3 at 255.

**RESPONSE:  It is immaterial and undisputed. Plaintiff's exhibit contains a statement that an inquiry was made from the provost's office regarding the offer made to Gholami. However, Plaintiff's statements therein suggest that Papini denied the request for information came from him. No offer was made, so this line of facts is immaterial to the issues before the court.**

57.    Haididi passed along the request to Gholami. Ex. 3 at 259.

**RESPONSE:  It is immaterial and undisputed. Whether Hadidi provided this information to Gholami or not is not relevant to any claim made.**

58.    On March 27, 2018, Gholami shared details of her job offer from NEOMA Business School with Rassule Hadidi and Renee Clausner. The offer included a full professorship, a gross annual salary of €90,000, an annual research budget of €4,000, and other benefits. Gholami emphasizes that money was not the sole factor in her decision to leave UIS. Ex. 3 at 251, 556.

**RESPONSE:  It is immaterial and undisputed that Gholami shared information with Hadidi which she purported to be the offer from NEOMA business school. Whether the information**

Law No. 22-cv-03268
5442-468 TMP

is correct or was shared is not material to the claims made.  The law does not require UIS to

match offers from other schools.

59.    When Gholami resigned, Provost Papini asked her to do an exit interview with him.
Doc. 22-7 at 15.

**RESPONSE:  It is conceded to be material and undisputed.**

60.    Papini explained that he does not typically do exit interviews, but when "valued
professors" leave he wants to get an understanding of why they are leaving. Doc. 22-7 at 16.

**RESPONSE:  It is conceded to be material and undisputed.**

61.    Papini wanted to meet with Gholami because he considered her to be a valuable
member of the faculty, and he wanted to know if there was anything that could be done to keep
her. Doc. 22-7 at 16.

**RESPONSE:  It is conceded to be material and undisputed. Testimony is at 15.**

62.    During the meeting with Papini, Gholami shared with him her concerns about
Haididi. Doc. 22-7 at 17.

**RESPONSE: It is conceded to be material and undisputed that Gholami stated some concerns**
**about Hadidi to Papini at the time of her exit interview. However, Hadidi's behavior is**
**immaterial as outside the scope of this claim.**

63.    Gholami expressly addressed the concerns she had about Hadidi's sexual
harassment. Doc. 22-6 at 50, 57.

**RESPONSE:  It is immaterial and disputed. Plaintiff states that she spoke with Hadidi about**
**her concerns. This is not consistent with her own testimony. In addition, Hadidi was not**
**involved in determining the terms of her rehire. Accordingly, her statements to him and**

Law No. 22-cv-03268
5442-468 TMP

**others about Hadidi was not relevant.  It is not disputed that Gholami reported to Papini that she did not like Hadidi's style of management. These statements are immaterial as Papini's actions suggest an effort to keep Gholami, not to request negative consequences.**

64. During the exit interview, Papini asked Gholami if she would consider returning if Haididi were no longer the head. She indicated that she would. Doc. 22-7 at 18.

**RESPONSE:  It is conceded to be material and undisputed.**

65. Even before Gholami brought information to him, Papini had concerns about Haididi's "autocratic leadership style." Doc. 22-7 at 18.

**RESPONSE:   It is immaterial and undisputed. Hadidi's behavior is not at issue and is therefore irrelevant. The statement is also immaterial as Papini's actions demonstrate an effort to keep and bring Gholami back.**

66. Papini had previously heard from other faculty members about Haididi, but they were afraid he would retaliate against them if they knew he was speaking to the Provost. Doc. 22-7 at 22.

**RESPONSE:  It is immaterial and undisputed. Evidence about Hadidi's actions is not relevant to this claim. The actions of Papini demonstrate an effort to keep Gholami. Whether Papini was aware of this information or not is not material to the claims at issue.**

67. After the meeting Papini passed along Gholami's concerns to UIS' legal counsel. Doc. 22-7 at 19.

**RESPONSE:  Objection. Immaterial.  Attorney/Client privilege. Papini had a discussion with his counsel after his interview with Gholami. He is not required to discuss his conversation. The discussion is not relevant to the claims in this case.**

Law No. 22-cv-03268
5442-468 TMP

68.     On April 12, 2018, Gholami posted on social media that she had accepted a position at NEOMA beginning that fall.

**RESPONSE:  Immaterial.  Whether Gholami posted her new position on social media is not relevant. She cites to no evidence to support this. The statement has no bearing on the claims made.**

69.     Gholami's resignation became effective in May 2018. Doc. 22-6 at 62.

**RESPONSE:  It is conceded to be material and undisputed that Gholami resigned effective the end of the spring of 2018.**

70.     During the academic year of 2018-2019, Gholami was at NEOMA. Ex. 22-6 at 27-28.

**RESPONSE:  It is conceded to be material and undisputed.**

**Gholami's return to UIS**

71.     Haididi announced he would be retiring. At that time, Papini wrote to Gholami to advise her that Haididi was leaving told her she should return to UIS. Doc. 22-7 at 24, 25.

**RESPONSE:  It is conceded to be material and undisputed.**

72.     Bhattacharya became dean in February 2019. Doc. 22-8 at 7, dep. p. 23.

**RESPONSE:  It is conceded to be material and undisputed.**

73.     Shortly after he returned, Bhattacharya was told by Papini that Gholami was interested in returning because Haididi was leaving. Doc. 22-8 at 8, dep. p. 21-23, Doc. 22-7 at 27.

**RESPONSE:  It is immaterial but disputed as to the discussion about the reason for Gholami's return. The pages referenced do not support Plaintiff's statement specifically. It is conceded**

Law No. 22-cv-03268
5442-468 TMP

**to be material and undisputed that Papini told Bhattacharya that Gholami was interested in returning in 2019.**

74.    Papini told Bhattacharya that Gholami left because Haididi had been harassing her. Doc. 22-8 at 7, dep., p. 24.

**RESPONSE:  It is conceded to be material and undisputed.**

75.    On April 3, 2019, Gholami wrote to Dr. Bhattacharaya and explained that part of the reasons she left UIS in 2018 was because of "sexual harassment by my line manager." Ex. 4 at 39.

**RESPONSE:  It is conceded to be material and undisputed that Gholami reached out to Bhattacharya in an attempt to explain why she left her position at Aston Business School and UIS in the context of her effort to become rehired.**

76.    Bhattacharya told Papini that he had reservations about bringing Gholami back because she previously left. Doc. 22-8 at 10, dep. at 33.

**RESPONSE:  It is conceded to be material and undisputed that Bhattacharya expressed his reservations about bringing back a faculty member who had resigned. Doc. 22-8 at pps. 33-36.**

77.    To Bhattacharya, his boss Papini seemed "very keen to have Dr. Gholami return." Doc. 22-811, dep. at 37.

**RESPONSE:  It is conceded to be material and undisputed.**

78.    On April 10, 2019, Papini wrote to Ghoami telling her that he "considered it a loss when [she] left, and I consider it a gain should you decide to return." Ex. 4 at 46.

**RESPONSE:  It is conceded to be material and undisputed.**

Law No. 22-cv-03268
5442-468 TMP

79.     The process for a faculty member to return to UIS is for the Department (co-workers) to vote on whether the former employee should be re-hired. If approved, the Dean can then negotiate the details of the re-hire. Ex. 3 at 168.

**RESPONSE:  It is conceded to be material and undisputed that Gholami was approved for rehire and that the Dean negotiated terms after the approval. It is immaterial but disputed that this statement supports the position that UIS has a specific process for rehiring former faculty as there is no stated process noted for this.  It is not clear what Ex. 3 at 168 refers to as Plaintiff's 29-4 Exhibit-3 does not appear to include such a page.**

80.     Before the vote, Gholami received a telephone call from Tewei Wang, a MIS professor. He yelled at her and told her not to come back. Doc. 22-6 at 131.

**RESPONSE:  It is immaterial and somewhat disputed. Plaintiff testified at pages 131-132 that she was not sure of when Wang called her in relation to the votes. However, it is immaterial to her claim that Wang told her not to come back. He was not involved in negotiating the terms of her rehire. Plaintiff admits that she was not happy at UIS, so Wang reminding her that she was unhappy at UIS is not material to the claims stated.**

81.     During her original tenure, Gholami told Wang she had been sexually harassed by Haididi. Ex. 5 dep. p. 11-12.

**RESPONSE:  Immaterial but disputed. Professor Wang's testimony suggests that Gholami complained that Hadidi imposed work pressure and performance expectations. p. 11.  She did not refer to sexual harassment. He stated that she reported that Hadidi asked her out on a date. p. 12. He offered to report this to UIS and she told him she did not want him to do so. p. 13.**

Law No. 22-cv-03268
5442-468 TMP

82.     Wang told Gholami not to return because she was not happy at UIS, and he didn't think she would be happy returning. Ex. 5 dep. p. 15-16.

**RESPONSE:  It is immaterial and undisputed. Wang's comments to Gholami are not relevant to her claims against UIS. He was not involved in her negotiations. His statements were factual.**

83.     Bhattacharya ultimately supported Papini's desire that Gholami returning to UIS because of what Papini said and because of her CV. Doc. 22-8 at 11, dep. at 37-38.

**RESPONSE:  It is conceded to be material and undisputed.**

84.     Haididi expressed little opinion about Gholami returning. He told Bhattacharya "if that is what you want." Doc. 22-8 at 11, dep. at 40.

**RESPONSE:  It is conceded to be material and undisputed that Hadidi expressed no reservations (not no comment) about Gholami's return. He used words to the effect of "if that's what you want, you know, we will facilitate that." Dep. p. 40. Bhattacharya's comments are not correctly noted by the statement as written by Plaintiff.**

85.     During the Department meeting to vote on Gholami's return, Wang stated he was opposed to her returning because she had not been happy when was there. Ex. 5, dep. p. 17.

**RESPONSE:  It is immaterial and undisputed. Wang is not the Defendant. He is entitled to his feelings and opinions as a coworker to Gholami.  The university has no obligation to force colleagues to vote in any particular way.  This comment is immaterial as the vote was in Gholami's favor, so there was no impact on her return.**

86.     On April 26, 2019, the MIS Department voted to return Gholami as a tenured associate professor. Ex. 4 at 48-49.

Law No. 22-cv-03268
5442-468 TMP

**RESPONSE: It is conceded to be material and undisputed.**

87.    This vote allowed for Gholami to be hired without the position being posted. Doc. 22-8 at 12, dep. at 41.

**RESPONSE: It is conceded to be material and undisputed.**

88.    Dr. Haididi officially left UIS effective August of 2019. Doc. 22-8 at 7, dep. p. 22.

**RESPONSE: It is conceded to be material and undisputed.**

89.    Bhattacharya made the decision that Gholami would be brought back as an associate professor and not a full professor. Doc. 22-8 at 14, dep. at 52.

**RESPONSE: It is conceded to be material and undisputed.**

90.    Bhattacharya contends that his decision was based only on the UIS policy regarding promotion. Doc. 22 at 15, dep. at 54.

**RESPONSE: It is conceded to be material and undisputed that Bhattacharya relied upon the UIS policy Article 6 as the policies and procedures in effect which determined how someone would be considered for promotion. To the extent his answer and testimony do not match the statement, it is immaterial but disputed. Dr. Bhattacharya testified in his deposition that the rehire process for Gholami was outside the normal process. As noted herein by Plaintiff's additional facts, the process allowed her to circumvent the standard search requirements. The process allowed her to be rehired with tenure upon approval by the other faculty who voted to rehire her at the position of an Associate Professor. (Pl's fact 86). The job that was made available to Gholami was that of a tenured associate professor pursuant to the vote. Article 6 refers to the policy for promotion.**

Law No. 22-cv-03268
5442-468 TMP

91.    Gholami requested that she return as a full professor. Bhattacharya denied the request and on April 3, 2019, wrote, "[w]hile I am impressed by the number of offers you have received from various institutions to join their ranks as a full professor, I am unable to extend the same to you." He explained because she did not have two years as a tenured associate professor at UIS, she was not eligible to be a full professor under Article 6, Section 3 of the faculty handbook. Ex. 3 at 386, Doc. 22-3.

**RESPONSE:  It is conceded to be material and undisputed.**

92.    Ultimately, Gholami accepted the offer to return as an associate professor. Doc. 22-3.

**RESPONSE:  It is conceded to be material and undisputed.**

93.    On May 3, 2019, Gholami signed the official offer letter. Doc. 22-4.

**RESPONSE:  It is conceded to be material and undisputed.**

**UIS policy regarding eligibility for full professorship**

94.    The UIS Faculty Personnel Policy states that a candidate for full professor must have served at least six years as an Associate Professor at the University *or a comparable institution* and have completed two years of full-time continuous service at the University in the rank of Associate Professor. Doc. 22-2 at 1. (emphasis added).

**RESPONSE:  It is conceded to be material and undisputed.**

95.    Ranjan Karri (male/India) was made a full professor on August 16, 2019. Ex. 4 at 57-59.

Law No. 22-cv-03268
5442-468 TMP

**RESPONSE: It is conceded to be material and undisputed that Ranjan Karri was made a full professor as noted by the referenced exhibits after 13 years at the rank of Associate Professor.**

96.     Xiaoging Li (male/Asia) was made a full professor in 2017. Ex. 4 at 57-59.

**RESPONSE: It is conceded to be material and undisputed that Li was made a full professor as noted by the referenced exhibits after 8 years at the rank of Associate Professor.**

97.     Atul Argawal (male/Asia) was hired in 2009 and made a full professor six years later on August 16, 2015. Ex. 4 at 57-59.

**RESPONSE: It is conceded to be material and undisputed that Agarwal was made a full professor after 6 years rank as an Associate Professor as noted by the attached material.**

## II. LEGAL ARGUMENT

Plaintiff's cause of action stems from her demand that UIS make her a full professor. She claims that because she served at that rank in France for one academic year, she must be offered that position here. Plaintiff claims that she was discriminated against because of her gender, race and national origin. However, none of her evidence supports these arguments. To the contrary, the facts, even as noted by Plaintiff, infer that Provost Papini reached out to Gholami to see if she would like to return once Dr. Hadidi announced his retirement.

At every turn, the facts are undisputed that a position was revived for Gholami and offered to her when none was being advertised as available. The process for hiring was expedited and via a non-traditional process which avoided an open and time-consuming search committee. Through a faculty vote approving her return as an Associate Professor, she was offered the

Law No. 22-cv-03268
5442-468 TMP

opportunity to return at the terms offered by Dean Bhattacharya. It is undisputed that she accepted this position. (PASF 92, 93).

She immediately filed suit. There were no negative actions taken between her start date of employment and the date she filed her EEOC complaint. Plaintiff's testimony and evidence relies heavily upon actions outside of what has been exhausted and outside the statute of limitations. Accordingly, any such claims are not relevant and should not be considered by the Court. To the extent the Court feels such claims are relevant, Defendant requests leave to amend the answer to include unstated claims outside the statute of limitations and outside the realm of what has been exhausted under Title VII.

As it pertains to what has been filed, Plaintiff provides no evidence to support a claim of discrimination. The only evidence she references for comparators refers to a form which shows that each was made a full professor after serving as an Associate Professor for somewhere between 6 and 13 years at UIS. Plaintiff fails to provide any evidence to support her claim that these individuals were comparators. No evidence has been established to suggest that any of them had quit and returned; that any of them circumvented the process set forth in Article 6 for promotion; or that any of them were hired in as Full Professor with similar credentials. To the contrary, Plaintiff's evidence establishes that these individuals had a long history as Associate Professors prior to becoming Full Professors- notably 6, 8 and 13 years. (PASF 95-97). Accordingly, Plaintiff's claims must fail.

Plaintiff suggests that UIS had a duty to offer her the role of Full Professor and that it is a jury question to make such determination. Whether a duty is owed is the role of the Court. There is no legal duty for UIS to hire Gholami. Accordingly, there was no duty to hire her at any specific

Law No. 22-cv-03268
5442-468 TMP

rank.  Plaintiff negotiated the terms of her return. She accepted the terms offered. (PASF 92-93).

When she decided the terms no longer suited her, she filed this claim rather than follow the

process set forth in Article 6 to achieve the promotion desired.  As faculty with the University,

Plaintiff accepted these terms for promotion. However, she has chosen not to follow the process

but instead wants a jury to listen to her employment demands and come up with a different

decision. That is not the role of a jury. The jury is to apply the law to the facts as they determine

them to be. There are no disputed facts.

The law imposes no duty upon Defendant to offer Gholami a position. However, a position

was offered by the very person to whom she shared her concerns. The position offered was

accepted. To the extent Gholami seeks to address issues that are no longer actionable. However,

she may not bootstrap expired claims into this one.

## There Is No Evidence of Retaliation

In order to prove a prime facie claim, Plaintiff has the burden of establishing that she

engaged in protected speech; that she suffered an adverse employment action; and that there is

a causal link between the activity and the action. *Giese v. City of Kankakee*, 71 F.4th 582, 590 (7th

Cir. 2023).  Plaintiff claims that the reason for not making her a Full Professor was pretextual.

Plaintiff must show that her complaints were protected speech.  Complaints about a

supervisor likely are protected speech. Accordingly, this issue warrants little argument.  Plaintiff's

claim fails due to lack of evidence to support her claims that a negative action was taken because

of these complaints.  The evidence establishes that the opposite was true. Plaintiff was offered a

position when none existed. Provost Papini heard her complaints of Hadidi. Subsequently, rather

than take a negative action, he is documented to be her champion for rehire.  Ultimately Papini

Law No. 22-cv-03268
5442-468 TMP

recommended and convinced Bhattacharya to hire Gholami. The faculty voted to rehire her as an associate professor.

Bhattacharya testified that he believed Gholami did not meet the eligibility requirements under Article 6. His letter to her supports this position. (PL's Additional Material Fact 91). In this correspondence, Bhattacharya documents his explanation and reasoning for denying Gholami's request to be made a Full Professor. (PAMF 91, Ex. 3 p. 386).  Plaintiff argues that Bhattacharya's interpretation of the promotion policy is wrong and therefore is pretextual. However, the standard requires Plaintiff to show that the reason given is a lie. *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022). Plaintiff's own evidence refutes this.   Bhattacharya's interpretation as to Gholami's eligibility could be incorrect. However, that does not mean he was lying. In addition, Gholami still would have to prove that the reason for the denial was the result of her complaints about a retired former manager. No evidence has been submitted to suggest that Dean Bhattacharya who was hired roughly 30 days prior to these salary negotiations was motivated to take a negative action because of a report about a retiring faculty member.  In addition, no reasonable jury could conclude that retaliation is the motive for the terms of a job offer, when no offer was a viable option.

**There Is No Evidence of Discrimination**

Plaintiff has the burden of presenting some evidence that would permit a reasonable factfinder to conclude that the plaintiff's protected characteristic caused the alleged adverse employment. *Khungar v. Access Community Health Network*, 985 F.3d 55, 573 (7th Cir. 2021).  The Court must determine whether Plaintiff has presented enough evidence to permit a reasonable factfinder to conclude that the Plaintiff's race, gender or national origin caused the adverse action.

Law No. 22-cv-03268
5442-468 TMP

Such evidence must be viewed holistically. *Chatman v. Board of Education of City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021).

Defendants argue this matter in the context of the burden-shifting framework. Accordingly, Plaintiff must show that she is in a protected class; was meeting the defendant's legitimate expectations; suffered an adverse employment action, and similarly situated employees who were not in her protected class were treated more favorably. *Marnocha v. St. Vincent Hospital and Health Care Center, Inc.*, 986 F.3d 711, 718-19 (7th Cir. 2021), quoting *Carson v. Lake County, Indiana*, 865 F.3d 526, 533 (7th Cir. 2017). Defendant concedes Plaintiff is in a protected class. However, the remaining evidence is lacking.  Defendant offered Plaintiff the position of Associate Professor.  Is that an adverse action?  There is no duty to offer her a position at all. Accordingly, offering a position where none existed is not reasonably taken as being adverse.  Regardless of the characterization of the offer, there is no evidence to support Plaintiff's claim that similarly situated persons not in her protected class were treated more favorably.  Plaintiff offers no evidence to establish that anyone else who left the University and came back was able to advance in rank to Full Professor without following the steps outlined in Article 6.  The comparators referenced are not comparable at all. The evidence provided states no reference to the process each followed. The evidence notes that each worked at the rank of Associate Professor at UIS for 6, 8 or 13 years compared to Plaintiff's 1 noted on the same chart. These numbers are consistent with the position taken by Bhattacharya as to why he felt a higher rank was not an option when negotiating as noted above.

WHEREFORE, Defendant prays that this Court would enter summary judgment in favor of Defendant, plus costs of suit.

Law No. 22-cv-03268
5442-468 TMP

Respectfully Submitted,

BOARD OF TRUSTEES OF THE UNIVERSITY
OF ILLINOIS, Defendant

s/ Theresa M. Powell
Theresa M. Powell, IL ARDC #: 6230402
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
4205 Wabash Avenue
Springfield, IL 62711
Direct Dial: 217.391.0921
Facsimile: 309.420.0402
Email: tmpowell@heylroyster.com

## PROOF OF SERVICE

I hereby certify that on July 1, 2025, I electronically filed the foregoing REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John A. Baker
BAKER, BAKER & KRAJEWSKI LLC
415 South Seventh Street
Springfield, IL 62701
Email: jab@bbklegal.com
**Counsel for Plaintiff**

s/ Theresa M. Powell
                    Theresa M. Powell

TMP/cs (5442-468)
45957583.1