E-FILED
Tuesday, 31 March, 2026  04:46:30 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **ROGHIEH GHOLAMI,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-cv-3268** |
| | ) | |
| **BOARD OF TRUSTEES OF THE** | ) | |
| **UNIVERSITY OF ILLINOIS,** | ) | |
| **Defendant.** | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is the motion for summary judgment filed by Defendant Board of Trustees of the University of Illinois. (Doc. 22).

## I.    PROCEDURAL BACKGROUND

On December 9, 2022, Plaintiff Dr. Roghieh Gholami filed a complaint asserting her employer, the University of Illinois-Springfield ("UIS" or "University") discriminated against her based on her national origin and sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2. (Doc. 1). The complaint also alleges UIS took retaliatory action against Plaintiff in violation of 42 U.S.C. § 2000e-3 for making complaints of sexual harassment. *Id*. All three counts stem from the University's decision to offer Plaintiff the position of Associate Professor rather than Full Professor in 2019. Defendant contends Plaintiff's claims of discrimination and retaliation are not supported by the evidence.

## II.    FACTUAL BACKGROUND[1]

Plaintiff, a woman born in Iran, is currently employed by UIS in her second tenure as an Associate Professor. (Doc. 29 at ¶ 14). She was originally hired by the University in 2015 in the Department of Management Information Services ("MIS Department") at the College of Business and Management ("Business College") as an Associate Professor. (*Id.* at ¶¶ 2–3; Doc. 22 at ¶ 3). Plaintiff received tenure in 2017. (Doc. 22 at ¶ 4; Doc. 29 at ¶ 52). According to the University's Tenure Committee, Plaintiff was the "most read author from UIS." (Doc. 29 at ¶ 47).

Despite her accomplishments at UIS, Plaintiff left the University in 2018 for another teaching job in France. (*Id.* at ¶ 23). Plaintiff states she left in large part due to the University's failure to address inappropriate conduct by the chair of the MIS Department, Rassule Haididi. (*Id.* at ¶¶ 10, 51). Plaintiff contends Haididi sexually harassed her by asking her out and staring at her body parts. (*Id.* at ¶¶ 34–39).[2] Plaintiff never filed a formal complaint with the University, nor did she file a lawsuit related to the conduct. (Doc. 22 at ¶ 57; Doc. 22-6 at 75:1–3). She spoke to her colleague, Tewei Wang, about her interactions with Hadidi. (Doc. 22-6 at 82:2–8). After resigning in 2018, Plaintiff did an exit interview with Dennis Papini, the University's then-provost. (Doc. 29 at ¶¶ 8, 59).

---

[1] Unless otherwise noted, the factual background of this case is drawn from the undisputed facts as conceded to in Defendant's statement of material facts; Plaintiff's response to Defendant's statement of material facts and additional material facts; Defendant's reply to Plaintiff's additional material facts; and exhibits to the filings. Exhibit citations are used for facts the Court finds are undisputed from the summary judgment record.

[2] The facts surrounding the alleged Haididi harassment are largely disputed by the parties. Whether the conduct occurred during her 2015-2018 tenure is immaterial to the instant lawsuit. However, the extent by which her prior allegations were known and relied upon by Defendants in 2019 is material.

During the meeting, Plaintiff discussed her concerns[3] related to Haididi. (*Id*. at ¶ 62; Doc. 22 at ¶ 132). Papini asked whether Plaintiff might return to the University if Haididi were no longer the Department chair. (Doc. 29 at ¶¶ 62–64). Plaintiff said she would. (*Id*. at ¶ 64).

Plaintiff's time away from UIS was brief. In France, Plaintiff taught at NEOMA Business School as a Full Professor for the 2018–2019 academic year. (*Id*. at ¶¶ 23, 70). In early 2019, Papini informed Plaintiff that Haididi was retiring and requested she return to the University. (*Id*. at ¶ 71). In March 2019, Plaintiff reached out to Papini asking if it was possible for her to return to the University. (Doc. 22 at ¶ 41). At that time and prior to any informal or formal offer of employment from UIS, Plaintiff had already made the decision to leave France and informed NEOMA that she was leaving. (*Id*. at ¶ 38). During negotiations, she tried to convince Somnath Bhattacharya, the dean of the Business College as of February 2019, to rehire her as a Full Professor. (Doc. 29 at ¶¶ 6, 72, 91). After Bhattacharya explained he could not offer Plaintiff a Full Professor position under the faculty handbook on April 3, 2019, Plaintiff told Bhattacharya she left UIS because of "sexual harassment by my line manager." (Doc. 29 at ¶¶ 75, 91; Doc. 29-4 at 386).

On April 9, 2019, Bhattacharya informally offered Plaintiff her prior position of tenured Associate Professor. (Doc. 22 at ¶ 67; Doc. 29 at ¶ 89). In justifying his offer, Bhattacharya told Plaintiff she was not eligible for hire as a Full Professor under Article

---

[3] The parties dispute the extent by which Plaintiff complained of the alleged sexual harassment during the exit interview. In deciding the matters at issue, the Court draws the reasonable inference that Plaintiff did, in fact, discuss Haididi's conduct with Papini.

6, Section 3 of the faculty handbook, the same Section he cited to on April 3 when he told Plaintiff she was not eligible for hire as a Full Professor. (Doc. 22-3; Doc. 29 at ¶ 90–91). Plaintiff accepted Bhattacharya's April 9 offer the day it was sent and did not dispute his interpretation of the handbook. (Doc. 22-3; Doc. 22 at ¶ 71). Her acceptance of the offer did not include any conditions. (Doc. 22 at ¶ 72). On April 26, 2019, the MIS Department voted to return Plaintiff as a tenured Associate Professor. (Doc. 29 at ¶ 86). The vote allowed the rehiring of Plaintiff without publicly posting the position. (*Id*. at ¶ 87). Haididi expressed no reservations to Bhattacharya about Plaintiff's rehiring. (*Id*. at ¶ 84). Plaintiff signed a formal offer letter in May of 2019. (Doc. 22 at ¶ 77). Plaintiff made no indication that she did not want to work at UIS under the terms identified in her offers and letters of appointment. (*Id*. at ¶ 80).

Plaintiff contends her return to UIS was not universally well-received. Specifically, she states Wang called her before she was officially rehired and advised her to not come back to UIS because he did not think she would not be happy in a second tenure. (Doc. 29 at ¶¶ 80, 82). During the Department meeting to vote on Plaintiff's return, Wang stated he was opposed to her returning because she had not been happy when she was there. (*Id*. at ¶ 85). However, Wang was not involved in the rehiring negotiations and the vote to rehire her was approved. (*Id*. at ¶ 86).

Plaintiff's second employment with UIS started in August of 2019. She filed charges with the Illinois Department of Human Rights in October of that year. (Doc. 22 at ¶¶ 81–82). Plaintiff concedes that the instant lawsuit is based on her 2019 rehiring only.

(Doc. 29 at 2). Despite encouragement from Papini to do so, Plaintiff never applied for a promotion to become a Full Professor and remains an Associate Professor. (*Id*. at ¶¶ 92, 147-148).

## III. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Biggs v. Chic. Bd. Of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023) (internal quotation marks and citation omitted). The Court views the evidence and construes all reasonable inferences in favor of the non-movant. *Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). "The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Driveline Systems*, 936 F.3d at 579 (internal quotation marks omitted).

### B. Analysis

### (1) Discrimination

Plaintiff argues she was not offered the position of Full Professor because she is a woman and from Iran. An employer is prohibited under Title VII from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To defeat a motion for summary judgment, a plaintiff must present evidence that "would permit a reasonable fact-finder to conclude that [plaintiff] was subjected to an adverse employment action based on a statutorily prohibited factor." *McCurry v. Kenco Logistics Servs., Inc.*, 942 F.3d 783, 788 (7th Cir. 2019).

Defendant argues Plaintiff's rehiring was not an "adverse employment action" amenable to suit but, rather, a beneficial employment action. Defendant interprets Title VII and Plaintiff's claims too narrowly. The Seventh Circuit has "broadly defined" an actionable adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001) (citations and internal quotation marks omitted). Consistent with this precedent, plaintiffs can bring Title VII claims alleging they were not hired to the pay or position they deserved due to discrimination or retaliation. *E.g.*, *Adams v. CBS Broad., Inc.*, 61 F. App'x 285 (7th Cir. 2003) (finding a technician at a television station had not been hired at a pay rate less than those outside her protected

class). Here, Plaintiff alleges she sought the position of Full Professor but was hired as an Associate Professor due to unlawful discrimination and retaliation. The fact she was nonetheless hired as opposed to, say, fired or demoted is relevant but does not by itself defeat her claim.

In considering whether a Title VII plaintiff has met her burden at summary judgment, courts must evaluate the evidence as a whole. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2019); *see also Lewis v. Wilkie*, 909 F.3d 858, 867 n.2 (7th Cir. 2018) (stating *Ortiz* has been applied to both discrimination and retaliation claims). The test is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. Plaintiffs "may prove discrimination in a holistic fashion, by proffering direct or circumstantial evidence." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (internal quotation marks and citation omitted).

Alternatively, plaintiffs may seek to show discrimination or retaliation by utilizing the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id*. Under that method, Plaintiff must show (1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for the position; and (4) the employer hired someone for the position outside the protected group who was not better qualified than the plaintiff. *Chatman v. Bd. of Ed. of the City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021) (citing *Johnson v. Gen. Bd. of Pension and*

*Health Benefits of United Methodist Church*, 733 F.3d 722, 728–29 (7th Cir. 2013)). If Plaintiff meets each element of her prima facie case, the burden shifts to Defendant to "articulate a legitimate nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to Plaintiff to submit evidence that the employer's explanation is pretextual." *Bragg v. Munster Medical Research Foundation*, 58 F.4th 265, 271 (7th Cir. 2023) (internal quotation marks omitted).

Plaintiff encourages the Court to use the more holistic approach described in *Ortiz* rather than the four-step *McDonnell Douglas* framework because the latter method "has become encrusted with the barnacles of multi-factor tests and inquiries that it misdirects attention." (Doc. 29 at 41–42) (citing *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 893 (7th Cir. 2001) (Easterbrook, F., dissenting)). Despite judicial criticism of the *McDonnell Douglas* framework, the Seventh Circuit continues to regularly apply it, barnacles notwithstanding. *E.g. Mitchell v. Exxon Mobil Corp.*, No. 24-2823, 2025 WL 1924526, at *5 (7th Cir. July 14, 2025) (applying both the *McDonnell Douglas* and *Ortiz* approaches). "Although there are many tests and rubrics for viewing discrimination claims, it is important to recall that, at the end of the day they are all merely convenient ways to organize our thoughts." *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022). The Court will apply both approaches for the sake of thoroughness.

### (a) Application of the *McDonnell Douglas* Framework

Neither party disputes Plaintiff satisfies the first prong of the *McDonnell Douglas* framework. As a woman from Iran, Plaintiff belongs to two protected classes. Defendant

argues the first part of the second prong is not satisfied because Plaintiff did not "apply" to be a Full Professor. (Doc. 22 at 22). This argument is overly semantic. Plaintiff did not formally "apply" to be a Full Professor because she did not go through the typical open hiring process—the school offered her the position without posting the position elsewhere. There is no dispute Plaintiff requested the position of Full Professor, which therefore satisfies the first prong.

As to the qualification requirement, Plaintiff argues her prior teaching experience qualified her for hire as a Full Professor. The Court will not walk through Plaintiff's CV, but the record indicates she is an accomplished professor. In particular, Plaintiff has published many papers and was the "most read author from UIS." She also taught at NEOMA Business School in France as a Full Professor.

Plaintiff contends Bhattacharya was incorrect in finding her ineligible for a Full Professorship under Article 6, Section 3 of UIS' faculty handbook ("Section 3"). Under Section 3, "[a] faculty member will have served at least six (6) years as an Associate Professor at the University or at a comparable institution and have completed two (2) years of full-time continuous service at the University in the rank of Associate Professor before being awarded the rank of professor." (Doc. 22-2 at 1). Before coming to UIS in 2015, Plaintiff worked at Aston University, a "comparable institution," as an Associate Professor since 2011. (Doc. 29 at ¶ 21). Thus, Plaintiff's cumulative time as an Associate Professor at Aston and UIS appears to exceed the six-year threshold to be qualified for a promotion to Full Professor. Section 3 also requires an individual to work two years of

full-time continuous service at UIS as an Associate Professor, which Plaintiff completed during her employment at the University from 2015 to 2018. (Doc. 29 at ¶¶ 30, 54). Defendant does not seriously dispute Plaintiff's qualifications and concedes Bhattacharya's interpretation of Section 3 may have been wrong, but Defendant argues there was no pretext because he honestly believed she did not meet the eligibility requirements. Notably, Plaintiff never questioned his interpretation of her eligibility before she accepted the position of Associate Professor. Thus, Plaintiff has satisfied the second and third prongs.

Plaintiff's claim fails at the fourth prong because she has failed to present one or more comparators who received the position she sought. To determine whether a comparison is proper, the court asks "essentially, are there enough common features between the individuals to allow a meaningful comparison?" *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd,* 553 U.S. 442 (2008). There must be "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.*

Plaintiff proposes several comparators with similar years of experience who received promotions to Full Professor. (Doc. 22 at ¶ 101; Doc. 29 at ¶¶ 95–97). However, all the comparators were Associate Professors at UIS who were *promoted* to Full Professors. (Doc. 29-5 at 19–21). None of them were hired on as Full Professors. This difference is key because Bhattacharya told Plaintiff she could later apply to be promoted

to Full Professor when offering her the Associate Professor position. (Doc. 22-3). Furthermore, candidates for promotion must prepare a portfolio documenting eligibility and satisfaction of the criteria for the rank sought as specified in the University's internal policies. (Doc. 22-2 at 1–2). Plaintiff refuses to go through the promotion process despite encouragement from the University to do so. Because Plaintiff cannot point to similarly situated individuals not of her protected class who were hired as Full Professors, she has not satisfied the fourth prong.

As outlined below, even assuming Plaintiff satisfied the fourth prong of the *McDonnell Douglas* framework, Plaintiff has failed to demonstrate that a reasonable jury could find Defendant's explanation was pretextual.

### (2) Application of the *Ortiz* Approach

*Ortiz* charts an alternative course to the same destination. *Ortiz* asks "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. The evidence does not permit a reasonable factfinder to conclude UIS unlawfully withheld the position of Full Professor from Plaintiff based on her national origin or gender. The undisputed facts show Plaintiff asked to return to the University after encouragement from the provost and was hired without the University posting an opening. These favorable actions show preferential rather than discriminatory treatment. Plaintiff signed her formal offer letter in May of 2019 and made no indication that she did not want to work at UIS under the terms

identified in her offers and letters of appointment. Furthermore, since returning to the University, Plaintiff has been encouraged to apply for a promotion to Full Professor but has declined to do so. This encouragement further indicates the University was not discriminating against her when it offered her the position of Associate Professor rather than Full Professor.

Plaintiff contends opposition to her return from within the MIS Department and reluctance from Bhattacharya is evidence of discrimination. However, Wang is the only MIS Department professor who publicly opposed her rehire and he played no part in the negotiation or decision to rehire Plaintiff as an Associate rather than Full Professor. There is no evidence to suggest Wang influenced Bhattacharya, the decisionmaker, on her position either.

Furthermore, there is no record of Bhattacharya making discriminatory, unlawful, or even negative remarks about Plaintiff throughout the process. In *Napier v. Orchard Sch. Found.*, a plaintiff alleged gender discrimination when he lost his position as director of a middle school by highlighting comments made by staff members about the school having too many men. 137 F.4th 884, 894 (7th Cir. 2025). The Seventh Circuit found the comments were irrelevant because there was no evidence to suggest the decisionmaker had made similar comments, agreed with them, or had even heard them. *Id.* Likewise, record evidence indicates Bhattacharya never made, agreed with, or even heard any comments that would suggest Plaintiff should not be rehired as a Full Professor because she was a woman or from Iran. Wang is the only one who publicly stated he did not want Plaintiff

to come back, and his comments were not discriminatory in nature and occurred after Plaintiff accepted Bhattacharya's offer.

Plaintiff testified Wang suggested to her in a personal conversation that her Iranian origin and sex had helped her receive her job offer. (Doc. 22-6 at 203:12–24, 204:5–21). Based on that conversation, she argues Wang made similar statements to Bhattacharya during the hiring process. However, Wang testified he never discussed Plaintiff's return with Bhattacharya or Papini, and his only comments to Hadidi were made at the Department meeting held after Plaintiff accepted Bhattacharya's offer. (Doc. 29-6 at 16:4–25). As such, Plaintiff's theory that Wang was implicating her sex and national origin in discussions with the hiring decisionmakers is unpersuasive and not supported by the summary judgment record. *See Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) ("[U]ncorroborated, self-serving testimony cannot support a claim if the testimony is based on speculation, intuition, or rumor or is inherently implausible." (internal quotation marks omitted)).

Plaintiff's argument heavily relies on the possibility a jury would view Bhattacharya's stated reliance on Section 3 as pretext for discrimination. According to the Seventh Circuit, "[p]retext is a lie, specifically a phony reason for some action, not just faulty reasoning or mistaken judgment on the part of the employer." *Napier* 137 F.4th at 892 (internal quotation marks omitted). The parties disagree on what Plaintiff must prove as to pretext to survive summary judgment. Defendant argues Plaintiff must show an employer's given reasons are pretext for a prohibited animus and therefore showing

Bhattacharya may have lied is not enough to get past summary judgment. The Seventh Circuit recently clarified the significance of pretext evidence in *Murphy v. Caterpillar Inc.* when holding plaintiffs need not provide additional evidence as to a prohibited animus after showing pretext. 140 F.4th 900, 911 (7th Cir. 2025); *Paterakos v. City of Chicago*, 147 F.4th 787, 797 (7th Cir. 2025) (citing to *Murphy's* pretext analysis in a Title VII context). According to the Court, "when a plaintiff has offered evidence permitting a reasonable inference of pretext, summary judgment should be denied." *Id.* Therefore, Plaintiff is only required to show Bhattacharya's given reason for not hiring her as a Full Professor was pretext. Whether the pretext was for a discriminatory purpose is left for the jury to decide.

As discussed above, Defendant does not seriously contest the accuracy of Bhattacharya's interpretation of Section 3. Instead, the University argues that the asserted incorrect interpretation was based on Bhattacharya's recent hiring and his genuine honest belief she was not eligible for the position. Plaintiff has not offered any evidence to permit a reasonable inference that the alleged incorrect interpretation was a lie or a phony reason.

The undisputed evidence demonstrates Bhattacharya's reliance on Section 3 was at worst "faulty reasoning" and a mistake. *See also Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997) ("The pretext inquiry focuses on the honesty—not the accuracy—of the employer's stated reason[s]."). For one, Bhattacharya was transparent about his reliance on Section 3. In two emails to Plaintiff telling her she was not yet eligible to be a Full Professor, Bhattacharya cited the exact handbook provision he was

relying on, provided a link to the handbook, and outlined his understanding of when Plaintiff could apply for a Full Professorship under Section 3. A college dean fabricating pretextual reasoning to veil his discrimination would presumably not lay out a justification that is, according to Plaintiff, "plainly not true" under internal University policies. (Doc. 29 at 47). Notably, Plaintiff never contested Bhattacharya's interpretation of Section 3 and, instead, accepted his offer without any conditions. Finally, Bhattacharya was only hired at UIS  month before he entered into hiring negotiations with Plaintiff, indicating he likely had limited experience applying the hiring policies.

The Seventh Circuit has found erroneous interpretation of a policy is not evidence of pretext when that interpretation is consistently applied. *Ellis v. United Parcel Serv.*, 523 F.3d 823, 829–30 (7th Cir. 2008); *Guinto v. Exelon Generation Co., LLC*, 341 F. App'x 240, 247 (7th Cir. 2009). Bhattacharya consistently relied on his interpretation of Section 3 when providing his reasoning to Plaintiff on April 3, 2019, and April 9, 2019.

Finally, a comparator analysis does not support the finding that Bhattacharya's justification was pretext. *See Napier*, 137 F.4th at 894 (finding comparator evidence relevant to a pretext analysis). As discussed above, Plaintiff fails to provide sufficient evidence to show her proposed comparators are proper, because they were all promoted to Full Professor after completing the requirements per University policy. They also did not accept the position of Associate Professor without any conditions after a special hiring process was implemented for their return to the University. Finally, it is unclear whether the proposed comparators were promoted inconsistent with Bhattcharya's interpretation

of Section 3. His communications with Plaintiff suggest he read the Section as requiring six years of experience as a *tenured* associate professor as prerequisite for promotion, rather than just associate professor. (Doc. 22-3). Plaintiff does not indicate how long her proposed comparators were tenured. Therefore, the undisputed material facts fail to show Bhattacharya's interpretation of Section 3 was pretext.

To conclude, Plaintiff has not presented sufficient evidence that could persuade a reasonable jury that she was not rehired as a Full Professor because of her gender or national origin. Gholami herself reached out to Provost Papini asking to return and when offered the position of Associate Professor on April 9, 2019, accepted her prior position without contesting the interpretation of Section 3 or the transparent reasons given to her for not receiving a Full Professorship. Finally, Plaintiff has been encouraged to apply for a Full Professorship by Defendant but has chosen not to do so. For these reasons, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's discrimination claims.

### (3) Retaliation

To survive summary judgment on a retaliation claim, Plaintiff must show evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018) (quoting *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017)). A plaintiff may "supply the causal link through circumstantial evidence from which a jury may infer inter intentional discrimination." *Stephens v. Erickson*, 569 F.3d 779,

787 (7th Cir. 2009). Drawing on the analysis above, Plaintiff argues she engaged in protected activity by raising concerns about Haididi's conduct and the University's decision to not rehire her as a Full Professor was an adverse action. Plaintiff's retaliation arguments proceed much like her discrimination arguments, with her main defense being a jury could simply disbelieve Bhattacharya's stated reason for not hiring her as a Full Professor and infer he was retaliating against Plaintiff for unofficially complaining about Haididi's conduct.

Defendant contends there is no evidence to suggest the terms of Plaintiff's offer would have been better or different had she not complained about Haididi's conduct to Papini. In fact, Papini was integral in arranging Plaintiff's return to UIS. Furthermore, as explained above, Bhattacharya's decision to offer Plaintiff an Associate Professor position was based on his interpretation of UIS policy. His two emails clearly outlined his reasoning and were not contested by Plaintiff. Notably, Plaintiff only informed Bhattacharya of her prior complaints to Papini *after* Bhattacharya's told her she was ineligible for a Full Professorship on April 3, 2019. While Papini told Bhattacharya that Plaintiff "had been at the receiving end of harassment," he, according to Bhattacharya, provided no additional details about the incident or Plaintiff's related complaints. (Doc. 22-8 at 24:14–16). Haididi even supported Plaintiff's return to the University. Thus, the University's position to rehire Plaintiff as a tenured Associate Professor did not change after Plaintiff informed Bhattacharya of protected activity.

Finally, Defendant points out Bhattacharya was hired approximately thirty days prior to salary negotiations with Plaintiff, further indicating he had limited knowledge of Plaintiff's complaints to Papini in 2018 and had no intent to retaliate against her. (Doc. 29 at ¶ 62). The Court finds this record evidence shows the decision to rehire Plaintiff as an Associate Professor rather than Full Professor was not done as retaliation for any protected complaints made by Plaintiff.

Plaintiff is correct in stating that she does not need smoking gun evidence to prove her retaliation claim and circumstantial evidence can be enough to get past summary judgment. However, she needs more than she provides. As explained above, the evidence shows Bhattacharya did not give a phony reason for not offering Plaintiff her desired position. Plaintiff makes no other argument in favor of her retaliation claim. A reasonable jury could not find in Plaintiff's favor on this record. As such, the Court grants Defendant's request for summary judgment on Plaintiff's retaliation claim.

**(4) Costs of Suit**

Defendant seeks costs of suit. Under Title VII, a prevailing defendant may only obtain attorney's fees upon a finding a plaintiff's action "was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978). Defendant has not made an argument that Plaintiff's claims meet this standard. As such, the Court denies Defendant's request.

**IV.    CONCLUSION**

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED except with respect to the costs of suit. Clerk is directed to enter Judgment in favor of Defendant and against Plaintiff.

ENTER: March 31, 2026

s/*Colleen Lawless*

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE